Case No. 23-5609

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

JANE DOE 1, *et al.*

*Plaintiffs-Appellees*

v.

WILLIAM C. THORNBURY, JR.,
in his official capacity, *et al.*

*Defendants-Appellees*

v.

COMMONWEALTH OF KENTUCKY *ex rel.*
ATTORNEY GENERAL DANIEL CAMERON

*Intervening Defendant-Appellant*

———————————————

On Appeal from the U.S. District Court for the
Western District of Kentucky, No. 3:23-cv-230

———————————————

# COMMONWEALTH OF KENTUCKY'S RESPONSE TO PETITION FOR REHEARING EN BANC

———————————————

Daniel Cameron
 *Attorney General of Kentucky*
Victor B. Maddox
 *Deputy Attorney General*
Matthew F. Kuhn
 *Solicitor General*
Alexander Y. Magera
 *Assistant Solicitor General*

Office of Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for the Commonwealth of Kentucky*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION.................................................................................... 1

BACKGROUND..................................................................................... 2

ARGUMENT ......................................................................................... 4

   I. The Court should wait for the panel to issue its decision......................... 4

   II. *L.W.* got the merits right. ................................................................ 5

CONCLUSION .................................................................................... 12

CERTIFICATE OF COMPLIANCE ......................................................... 13

CERTIFICATE OF SERVICE ................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*,
495 F.3d 695 (D.C. Cir. 2007) (en banc) ............................................................ 6

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020) ........................................................................... 8, 9

*Brandt ex rel. Brandt v. Rutledge*,
47 F.4th 661 (8th Cir. 2022) ..................................................................... 1, 5

*Brown v. Ent. Merchs. Ass'n*,
564 U.S. 786 (2011) ................................................................................ 11

*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022) ................................................................... 6, 8, 9, 10

*Doe 1 v. Thornbury*,
75 F.4th 655 (6th Cir. 2023) (per curiam) ................................................. 3

*Doe ex rel. Doe v. Governor of N.J.*,
783 F.3d 150 (3d Cir. 2015) ...................................................................... 7

*Eknes-Tucker v. Governor of Ala.*,
--- F.4th ---, 2023 WL 5344981 (11th Cir. Aug. 21, 2023) .................... *passim*

*Geduldig v. Aiello*,
417 U.S. 484 (1974) ............................................................................. 8, 10

*Gen. Elec. Co. v. Gilbert*,
429 U.S. 125 (1976) ................................................................................. 8

*Gonzales v. Carhart*,
550 U.S. 124 (2007) ............................................................................ 6, 11

*L.W. ex rel. Williams v. Skrmetti*,
73 F.4th 408 (6th Cir. 2023) ................................................................ *passim*

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ..................................................................... 8

*Parham v. J.R.*,
442 U.S. 584 (1979) ................................................................................. 7

*Pelcha v. MW Bancorp., Inc.*,
988 F.3d 318 (6th Cir. 2021) ..................................................................... 8

*Smith v. City of Salem,*
  378 F.3d 566 (6th Cir. 2004)..............................................................................9

*Washington v. Glucksberg,*
  521 U.S. 702 (1997).........................................................................................5

**Statutes**

Ky. Rev. Stat. § 311.372...................................................................................2, 10

Ky. Rev. Stat. § 311.772...................................................................................10

Miss. Code Ann. § 41-41-191............................................................................10

**Rules**

6 Cir. I.O.P. 35..................................................................................................1, 4

## INTRODUCTION

Rehearing en banc is an extraordinary occurrence. Yet the plaintiffs request something even more extraordinary. They seek rehearing of an order denying them emergency relief when the panel intends to issue a merits decision in just over 30 days. The parties have already fully briefed this appeal on an expedited schedule, and oral argument will be held later this week. Whatever the panel decides as to the merits of the preliminary injunction issued below, rehearing can be considered at that point. There is no need for the full Court to intervene now when the panel is so near to completing its work.

This is especially true because the panel made clear that its views in *L.W. ex rel. Williams v. Skrmetti* are "initial" only. 73 F.4th 408, 422 (6th Cir. 2023). In very short order, the panel will provide its final views. Because whether to grant rehearing largely turns on whether the panel's holdings are consistent with precedent, 6 Cir. I.O.P. 35(a), the full Court should wait for the panel's final views. All the more so because there is now a circuit split about the applicable level of scrutiny under the Equal Protection Clause for a law like that at issue here. *Eknes-Tucker v. Governor of Ala.*, --- F.4th ---, 2023 WL 5344981, at *15 (11th Cir. Aug. 21, 2023); *Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 669–70 (8th Cir. 2022). This case may or may not warrant rehearing after the panel renders its decision. But rehearing is not warranted in this interim posture.

## BACKGROUND

This lawsuit challenges the constitutionality of Kentucky's Senate Bill 150. As relevant here, SB 150 prohibits prescribing puberty blockers and hormones to children to treat gender dysphoria. More specifically, the law prohibits a health-care provider from prescribing puberty blockers or hormones "for the purpose of attempting to alter the appearance of, or to validate a minor's perception of, the minor's sex, if that appearance or perception is inconsistent with the minor's sex." Ky. Rev. Stat. § 311.372(2)(a)–(b). The law took effect on June 29, 2023, but it includes a continuing-treatment exception to allow children already receiving the prohibited treatments to continue receiving them as long as they are "systematically reduced" over time. Ky. Rev. Stat. § 311.372(6).

The plaintiffs, seven children and their parents, sued to challenge SB 150. They alleged that SB 150 (i) infringes on parents' fundamental rights and (ii) constitutes prohibited sex discrimination. Compl., R.2, PageID#29–31. The district court granted the plaintiffs a preliminary injunction on both theories. Mem. Op., R.61, PageID#2299–313. On the fundamental-rights claim, the district court mainly found that the Commonwealth had "effectively concede[d]" the claim. *Id.* at PageID#2309. On the equal-protection claim, the district court reasoned that SB 150 is subject to heightened scrutiny because "[t]he minor's sex at birth determines whether or not the minor can receive certain types of medical care under the law." *Id.* at PageID#2303 (citation omitted).

2

And the district court determined that SB 150 failed heightened scrutiny primarily because it credited an amicus brief filed by medical interest groups. *Id.* at PageID#2302, 2305–08.

The Commonwealth sought a stay pending appeal from the district court. Mot. Stay, R.66, PageID#2417–31. When the court did not promptly rule, the Commonwealth sought relief in this Court. The next day, this Court issued *L.W.* There, by a 2–1 vote, the Court stayed a preliminary injunction against enforcement of Tennessee's analogue to SB 150. 73 F.4th at 422. The Court found that the Tennessee plaintiffs "are unlikely to prevail on their due process and equal protection claims," *id.* at 415—the same two claims that the plaintiffs alleged here. The Court made clear that its views on the merits are not final. *Id.* at 422. It even emphasized that "[w]e may be wrong" and set a "goal of resolving [the appeal] by no later than September 30, 2023." *Id.* The Court then consolidated *L.W.* with this appeal and set an expedited briefing schedule. Order (July 8, 2023).

After *L.W.*, the district court here stayed its preliminary injunction. Order, R.79, PageID#2494–96. The plaintiffs then sought emergency relief in this Court. By a 2–1 vote, this Court denied interim relief. *Doe 1 v. Thornbury*, 75 F.4th 655 (6th Cir. 2023) (per curiam). It found that *L.W.* "controls here" given that "Kentucky bans the same conduct" as the Tennessee law. *Id.* at 657. The Court acknowledged that the plaintiffs identified "two differences" between this case and *L.W.* but reasoned that "neither changes our balancing of the stay factors." *Id.*

Several days later, the plaintiffs sought rehearing of the Court's order denying emergency relief. In the meantime, the parties finished briefing this appeal, and the Court has scheduled oral argument for September 1, 2023.

## ARGUMENT

The Court should deny rehearing for two reasons. First, the panel is actively considering this case and will issue its decision in the very near term. To the extent the Court thinks this case may be worthy of rehearing, the Court should consider such a measure only after the panel completes its work. Second, the panel's initial views in *L.W.* are demonstrably correct. Parents do not have a fundamental right to secure puberty blockers and hormones for their children despite Kentucky law. And SB 150 does not discriminate on the basis of sex. It simply regulates medical treatments, some of which are unique to each sex.

## I.    The Court should wait for the panel to issue its decision.

Rehearing en banc is an extraordinary measure. It is appropriate only when a decision makes a "precedent-setting error of exceptional public importance" or "directly conflicts with Supreme Court or Sixth Circuit precedent." 6 Cir. I.O.P. 35(a). The plaintiffs believe this case meets that high bar. But at this point, all we have are the panel's "initial" views, which the panel acknowledged could be "wrong." *L.W.*, 73 F.4th at 422. Indeed, the partial dissent in *L.W.* "reiterate[d] the majority's caveat that today's decision is preliminary only." *Id.* at 423 (White, J., concurring in part and dissenting in part). As a result, it is too early to judge whether this case warrants the full Court's

4

attention. Importantly, the Court need not wait long to make that assessment. The parties just finished merits briefing. Oral argument will be held in four days. And the panel intends to rule by September 30—just over a month from now. At that point, the full Court can consider whether to grant rehearing. That is the better juncture to make such a determination.

The Commonwealth does not dispute that this is an important case. But that weighs in favor of letting the panel finish its work. As noted above, the circuits now disagree about whether a law like SB 150 is subject to rational-basis review or heightened scrutiny under the Equal Protection Clause. *Eknes-Tucker*, 2023 WL 5344981, at *15; *Brandt*, 47 F.4th at 669–70. Given this disagreement, the Court should defer consideration of rehearing until the panel renders its opinion. Only then can the Court reasonably determine whether rehearing is justified.

## II.    *L.W.* got the merits right.

The plaintiffs' two claims are bound to fail. *L.W.*'s initial views on the merits are correct, as the Eleventh Circuit's recent decision demonstrates. So rehearing should be denied even if the Court measures *L.W.*'s initial views against the standard for rehearing.

**1.** The parent-plaintiffs first argue that they have a fundamental right to secure puberty blockers and hormones for their children. They broadly frame their asserted fundamental right as a "right to obtain established medical treatments to protect their children's health and well-being." Compl., R.2, PageID#30. But that framing glosses over a lot. And framing very much matters in this context. *See Washington v. Glucksberg*,

521 U.S. 702, 721 (1997) (requiring a "'careful description' of the asserted fundamental liberty interest" (citation omitted)). What the parent-plaintiffs really seek is a fundamental right to secure puberty blockers and hormones for their children despite what Kentucky law says.

Whether the Fourteenth Amendment protects this alleged right depends on whether it is "'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (citation omitted). But the parent-plaintiffs' rehearing petition makes no meaningful effort to discuss history and tradition. Their merits brief is similarly deficient. As is the district court's decision. Mem. Op., R.61, PageID#2308–11. This failure cannot be overlooked, given that "[h]istorical inquiries of this nature are *essential* whenever we are asked to recognize a new component of the 'liberty' protected by the Due Process Clause." *Dobbs*, 142 S. Ct. at 2247 (emphasis added).

The parent-plaintiffs omit discussing history and tradition because the States have historically played a frontline role in regulating the practice of medicine. As a sister circuit put it, "[o]ur Nation's history and traditions have consistently demonstrated that the democratic branches are better suited to decide the proper balance between the uncertain risks and benefits of medical technology, and are entitled to deference in doing so." *See Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 713 (D.C. Cir. 2007) (en banc). And the States play this crucial role especially "in areas where there is medical and scientific uncertainty." *See Gonzales v. Carhart*, 550 U.S.

124, 163 (2007). As the Eleventh Circuit summarized in discussing Alabama's version of SB 150, "the use of these medications in general—let alone for children—almost certainly is not 'deeply rooted' in our nation's history and tradition." *Eknes-Tucker*, 2023 WL 5344981, at *10.

Rather than discuss the States' historical role in regulating medicine, the parent-plaintiffs stake their claim on *Parham v. J.R.*, 442 U.S. 584 (1979). Pet.10. But *Parham* did not involve parents seeking to ignore state law concerning medical treatment for their children. Rather, *Parham* concerned minors challenging a state law that *allowed* the treatment their parents sought. 442 U.S. at 587, 590–91, 597. As a result, when *Parham* made statements like parents have a "'high duty' to recognize symptoms of illness and to seek and follow medical advice," *id.* at 602, it did so in the context of parents seeking medical treatment permitted by state law. *Parham* thus has no purchase here, where parents seek treatments prohibited by state law. More to the point, although *Parham* supports "parents hav[ing] decision-making authority with regard to the provision of medical care for their children," it "does not support the extension of this right to a right of parents to demand that the State make available a particular form of treatment." *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 156 (3d Cir. 2015). Indeed, *Parham* itself recognized that "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." 442 U.S. at 603.

**2.** The plaintiffs' equal-protection claim is no more likely to succeed. SB 150 prohibits the use of puberty blockers and hormones to treat gender dysphoria regardless

of sex. True, only girls can take testosterone to try to change their sex, and only boys can take estrogen to try to change their sex. But merely regulating a treatment that only one sex can undergo is not sex discrimination. *See Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974); *Dobbs*, 142 S. Ct. at 2245–46. The plaintiffs simply cannot avoid this established proposition.

They first retreat to *Bostock v. Clayton County* for its Title VII reasoning that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 140 S. Ct. 1731, 1741 (2020). But the plaintiffs base their claim not on Title VII, but on the very differently worded Equal Protection Clause. And *Bostock* could not have been clearer that the particular text of Title VII drove its result. *See id.* This Court has already gotten that message. *Pelcha v. MW Bancorp., Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (refusing to apply *Bostock* to the Age Discrimination in Employment Act); *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021) (reasoning that Title VII analysis does not automatically apply to Title IX). As a result, *L.W.* was exactly right to conclude that *Bostock*'s "reasoning applies only to Title VII, as *Bostock* itself and our subsequent cases make clear." 73 F.4th at 420; *see also Eknes-Tucker*, 2023 WL 5344981, at *16 (holding that *Bostock* "bears minimal relevance to the instant case").

The plaintiffs suggest that case law holds that the meaning of sex discrimination under Title VII and the Equal Protection Clause is the same. Pet.6. Their lead case for this proposition is *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976). But *Gilbert* does not

help them. True, *Gilbert* says equal-protection case law is a "useful starting point" for interpreting Title VII. *Id.* at 133. But the plaintiffs seek something very different here: to use Title VII as a straitjacket in interpreting the Equal Protection Clause. And they seek to use a Title VII case (*Bostock*) that was expressly driven by the law's text—text that the Equal Protection Clause lacks. As a result, *Gilbert* does not stand for the proposition that Title VII and the Equal Protection Clause are the same.

The plaintiffs also cannot explain how *Bostock*'s reasoning could apply in the medical context. *Bostock* was clear about its scope: "An individual's homosexuality or transgender status is not relevant *to employment decisions*." 140 S. Ct. at 1741 (emphasis added). But unlike the employment context, an individual's sex often affects medical treatment. That's why (for example) laws regulating abortion, which is a procedure that only women can undergo, "do[] not trigger heightened constitutional scrutiny [under the Equal Protection Clause] unless the regulation is a mere pretext designed to effect an invidious discrimination against members of one sex or the other." *Dobbs*, 142 S. Ct. at 2245–46 (cleaned up) (quoting *Geduldig*, 417 U.S. at 496 n.20).

The plaintiffs next invoke this Court's decision in *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). But *L.W.* has already persuasively explained why *Smith* "does not move the needle either." 73 F.4th at 420–21. For one thing, *Smith* dealt with adults in the workplace, not with children in doctors' offices. 378 F.3d at 574–75. For another, the plaintiffs' expansive reading of *Smith* creates tension with *Dobbs*, which "held that medical treatments that affect only one sex receive rational-basis review." *L.W.*, 73

9

F.4th at 421; *see also Eknes-Tucker*, 2023 WL 5344981, at *17 (distinguishing the Eleventh Circuit's equivalent to *Smith*).

The plaintiffs simply cannot avoid this aspect of *Dobbs*, which built on the Supreme Court's decision in *Geduldig*. The plaintiffs counter that *Dobbs* and *Geduldig* are inapplicable because SB 150 "facially discriminates based on transgender status and, therefore, based on sex." Pet.7 (emphasis omitted). This argument fails for several reasons. To begin with, SB 150 operates the same way the law did in *Geduldig*. Facially, the *Geduldig* law prohibited both men and women from obtaining disability insurance coverage related to pregnancy. 417 U.S. at 489 (quoting the law); *see also id.* at 496–97. Of course, only women can become pregnant, but the law did not facially distinguish between the sexes. By like token, as a facial matter, SB 150 prohibits both boys and girls from being prescribed puberty blockers, testosterone, or estrogen for a specified purpose. Ky. Rev. Stat. § 311.372(2)(a)–(b). So just like in *Geduldig*, any differentiation between the sexes is not apparent based on SB 150's face. Any differentiation arises only upon learning that as a matter of biology only boys can take estrogen to try to change their sex while only girls can take testosterone to try to change their sex.

The plaintiffs respond by noting that, unlike the law in *Geduldig*, SB 150 uses the word "sex." Pet.7. But *Dobbs* applied *Geduldig*'s reasoning to a statute that used the word "woman." Miss. Code Ann. § 41-41-191(3)(e), (f), (j); *see Dobbs*, 142 S. Ct. at 2243 n.14. And Mississippi's law regulating abortion is no outlier. *E.g.*, Ky. Rev. Stat. § 311.772(3)(a) (prohibiting an elective abortion on a "pregnant woman"). The way

10

*Dobbs* applied *Geduldig* could not be more sensible. It is unsurprising that SB 150 uses the word "sex" given that the law regulates medical procedures that only one sex can undergo. *See L.W.*, 73 F.4th at 419 ("The Act mentions the word 'sex,' true. But how could it not?"); *Eknes-Tucker*, 2023 WL 5344981, at *15 (similar). The whole point of *Geduldig* and *Dobbs* is to allow the States, in the absence of pretext, to regulate medical procedures that only one sex can undergo.

Even if heightened scrutiny applies under the Equal Protection Clause, SB 150 survives such review. *See Eknes-Tucker*, 2023 WL 5344981, at *21–22 (Brasher, J., concurring) (finding that this is likely true with respect to Alabama's law). On this point, the plaintiffs mostly hide behind clear-error review and advert to their experts' (contested) assertions that puberty blockers and hormones help children with gender dysphoria. But the district court committed legal error by undertaking to resolve who is right on the science. As a matter of law, Kentucky's legislature has "wide discretion to pass legislation in areas where there is medical and scientific uncertainty." *Gonzales*, 550 U.S. at 163. Under heightened scrutiny, Kentucky gets to make "predictive judgment[s]" based on "competing" evidence. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799–800 (2011) (distinguishing between strict and intermediate scrutiny).

Even if clear-error review applies, the district court clearly erred. It simply accepted as gospel an amicus brief filed below without meaningfully considering the Commonwealth's overwhelming evidence to the contrary. Mem. Op., R.61, PageID#2302. The Commonwealth amply established the lack of scientific support for treating gender

11

dysphoria in children with puberty blockers and hormones and the very real risks attendant to such treatments. Expert Witness Decls., Rs.47-9, -10, -11, -12, PageID#1004–512; Fact-Witness Decls., Rs. 47-13, -14, -15, -16, -17, -18, -19, -20, -21, -22, -23, PageID#1513–75; Resp. Mot. PI Exs., R.47-1, -2, -3, -4, -5, -6, -7, -8, PageID# 517–1003.

*     *     *

This case may or may not warrant rehearing after the panel issues its decision. But with that decision coming so soon, the plaintiffs' request is premature. And in all events, *L.W.*'s initial views on the merits are correct. SB 150 is constitutional.

## CONCLUSION

The Court should deny the plaintiffs' petition for rehearing.

Respectfully submitted by,

*s/ Matthew F. Kuhn*
Daniel Cameron
 *Attorney General of Kentucky*
Victor B. Maddox
 *Deputy Attorney General*
Matthew F. Kuhn
 *Solicitor General*
Alexander Y. Magera
 *Assistant Solicitor General*

Office of the Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for the Commonwealth of Kentucky*

12

**CERTIFICATE OF COMPLIANCE**

I certify that this response complies with the type-volume limitation in Fed. R. App. P. 35(b)(2) and (e) because it contains 3,079 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Garamond font using Microsoft Word.

*s/ Matthew F. Kuhn*

## CERTIFICATE OF SERVICE

I certify that on August 28, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Matthew F. Kuhn*